WILKINSON, Circuit Judge,
concurring in part and dissenting in part:
I concur in the majority’s disposition of the excessive force claims and would affirm the judgment of the district court across the board. Indeed, the majority makes such a fine and thoughtful case for affirmance that it would surprise any reader to learn that this litigation is not at an end. The City of Danville police officers who confronted Rennie Edward Hunt, Jr., *175 responded commendably to the apparent hostage situation, as the majority opinion makes clear. Additional proceedings on disability and race discrimination claims can amount under the circumstances to no more than a fishing expedition.
I find no fault with the majority’s description of the situation that the defendants confronted on May 11, 2002. When Danville police officers arrived at Hunt’s apartment in response to a 911 call from a neighbor, neither Hunt nor his girlfriend, Virginia Evans, had been seen in the several days since Hunt’s return from a psychiatric hospitalization. Maj. Op. at 164, 170. Evans’s friends and family expressed concern about her wellbeing. Id. at 170. Evans herself told police that Hunt, who had recently been arrested for domestic assault against Evans, refused to let her come to the door. Id. at 169-70. And while she initially told the officers that she was okay, she soon ceased to respond to their attempts to contact her in order to ensure that she was safe. Id.
Hunt’s own statements to the officers did nothing to dispel fears of the worst. As the majority writes, Hunt gave the officers “reasonable grounds to believe that he had a weapon and was prepared to use it,” telling one officer “[i]f you come in here, I’ve got something for you,” and threatening to “blow [the] goddamned head off’ of another. Id. at 170.
Danville Police Department officials reasonably elected to deploy the City’s Emergency Response Team to the building. After repeatedly identifying themselves and stating that they had a warrant for Hunt’s arrest, members of the team forced entry into the apartment. Id. Hunt’s actions in the “smoke-filled, dark” space gave the officers additional cause to fear for Evans’s safety and their own. Id. “Hunt immediately charged at the agents with what they reasonably perceived to be a sickle-type rod or pipe and a screwdriver which the officers perceived to be a knife.” ' Id. Officer Ford fired two or three shots from his weapon, at which point Hunt picked up his cane and charged at the officers again, hitting Officer Ford’s shield and helmet. Id. at 166, 169-70. During this second charge, three officers fired at Hunt. Id. at 166.
Under these circumstances, as the majority notes, the officers’ use of deadly force, though tragic, was reasonable and proportional, because “a reasonable officer would have believed that Hunt had a weapon (including a gun and probably a knife), that he was holding.Evans against her will and refusing to allow her free movement, and that he was an immediate threat to the officers and to Evans.” Id. at 170.
There is no hint of discrimination in the officers’ reasonable and proportional response. The majority goes out of its way to emphasize as much. It writes that “it certainly appears that the officers sought to seize Hunt not because of his mental illness but because of his ‘objectively verifiable misconduct’ towards the officers and Evans,” and it further concludes that “[t]here is no indication that the officers’ actions towards Hunt were tainted by any race-based motivations, nor any evidence that Hunt was treated differently from similarly-situated white suspects.” Id. at 174. Based upon the majority’s description of the crisis, the majority writes with some understatement when it says “it does not appear likely from the existing record that discrimination was the motivating factor behind the officers’ actions.” Id. at 174.
Indeed, it is not clear even to the majority precisely what discrimination the plaintiff claims. With respect to disability, the majority writes that “[t]he precise nature of the discrimination claim is not clear to us,” id. at 174, and with respect to race, the majority notes that “[plaintiff’s counsel was unable to articulate any particular *176 basis for this claim at argument,” id. at 175. Despite this, the majority remands “for further proceedings.” Id. at 164. Thankfully, the majority’s remand is narrow, calling upon the district court to engage in “further delineation,” id. at 174, and “further evaluation,” id. at 175, but not mandating discovery, id. at 173-75.
Statutory protections may of course exceed constitutional ones and “an adverse determination on the Fourth Amendment claim is not necessarily determinative of the discrimination claims.” Id. at 173. This does not mean, however, that statutory and constitutional protections must be placed so squarely and affirmatively at odds. The qualified immunity balance between vindicating meritorious claims and protecting officials from the burdens of litigation is upset when plaintiffs may demand discovery into the motivations of officials whose conduct was outwardly blameless. Harlow v. Fitzgerald, 457 U.S. 800, 815-18, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). “[Tjhere is often no clear end to the relevant evidence” in such inquiries, making them “peculiarly disruptive of effective government.” Id. at 817, 102 S.Ct. 2727.
Such considerations affect the availability of discovery, as the Supreme Court has held that “a credible showing of different treatment of similarly situated persons” is required before plaintiffs may put officials to the labor and expense of discovery concerning equal protection claims of selective prosecution. United States v. Armstrong, 517 U.S. 456, 470, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996); see also Marshall v. Columbia Lea Reg’l Hospital, 345 F.3d 1157, 1167 (10th Cir.2003) (applying Armstrong limits to equal protection claims concerning traffic stops and arrests); United States v. Barlow, 310 F.3d 1007, 1010 (7th Cir.2002) (applying Armstrong limits to claim that defendant was singled out for law enforcement interview). To proceed with motivational inquiries under disability statutes and the Equal Protection Clause where a neutral basis for action is so exceptionally clear is to set the protections of immunity and the plain teaching of Armstrong at naught.
While the majority describes a remand as the “more prudent” course, Maj. Op. at 174, prudence counsels against perpetuating any further litigation based upon the encounter that the majority describes. There is ample basis to affirm on a record showing that Danville’s officers sought to protect in non-excessive fashion an innocent woman they reasonably believed to be a hostage, while under attack by a man they reasonably believed to be armed and dangerous. If in a desire to avoid litigation the officers had waited and Evans had been harmed, they would have been faulted all the more through the lens of hindsight. Continuing this lawsuit can only demoralize those who place their lives at risk for others.
I would affirm the judgment.